[No. 3649.]

## JOSE MARIA MENDIOLA *v.* THE STATE.

1. **VENUE.**— CONTINUANCE was sought in this case to procure testimony to prove that the offense was not committed in L. county, but in E. county. *Held,* that the continuance was properly refused because the testimony was abundant to show that it was committed in L. county; and because the absent testimony, considered in connection with that adduced on the trial, was probably not true, and because it was not shown by the application that the absent testimony, if present, and probably true, would defeat the jurisdiction of L. county by showing that the offense was committed in E. county, more than four hundred yards beyond the coterminous county line.

2. **INSANITY.**— BURDEN OF PROOF to establish insanity, when such defense is relied upon, is on the accused. The opinion of a witness upon the question is admissible, but, unless founded upon some substantial reason, is entitled to but little weight.

3. **PRACTICE — EVIDENCE.**— To support venue, the State introduced the certificate of the commissioner of the general land office, to the effect that the Mills survey on the south boundary of L. county was recognized by the said office as the true boundary line between L. and E. counties. It was urged against the competency of this evidence that the certificate did not contain the field notes of the survey. *Held* that, the survey being recognized by the land office as correct, it was properly a question of fact for the jury, and further, if the certificate without the field notes proved nothing,

it could not, though incompetent, have operated to the prejudice of the accused.

4. Same. — Charge of the Court, when first questioned as to its correctness in the motion for new trial, will not be revised on appeal unless it is fundamentally errroneous, or, when viewed in the light of all the circumstances, was calculated to prejudice the rights of the accused.

5. Murder — Fact Case. — See the statement of the case for evidence *held* sufficient to support a capital conviction for murder.

Appeal from the District Court of La Salle. Tried below before the Hon. D. P. Marr.

This was a capital conviction for the murder of G. M. Hodges, in La Salle county, on the 7th day of March, 1885.

Hugh Morrison, the first witness for the State, testified that about 3 o'clock on the evening of the homicide, he went to the railroad office at Encinal Station, to transact some business. The defendant, with a Winchester rifle in his hand, was the only man in the office. He made some unintelligible remark to the witness as the latter entered, and with his hand motioned witness to leave. Witness laid down a book he had brought, when defendant said something else and again motioned him to leave. Witness left, going to the deceased and C. W. McNeal, who were then sitting on the end of the step about ten feet from the office door. He said to deceased: "What does that man in the office mean? He acts like he is going to shoot one." Deceased got up, said, "O pshaw!" and started to the office. Just as he was in the act of looking in at the office door a shot was fired from the inside of the office, and deceased staggered off and fell near the northeast corner of the depot. Witness just then started to run along the north end of the depot, and when he reached the northwest end of the depot a second shot was fired, striking the witness's leg with a spent ball. A third shot was fired during the witness's flight.

Witness stopped when he reached the southwest corner of the depot platform, and looked back. He then saw the defendant leave the railroad office with a Winchester gun in his hand, cross the track, and proceed towards Spohns's store. The first shot was fired but a few moments after witness left the depot office. When the witness left the office defendant was standing near its center, about five feet from the door. McNeal ran before the witness did. McNeal was on his way back to the depot from Hodges's store when the witness next saw him. The deceased died within five or ten minutes after he was shot. He was the station agent at Encinal Station, when killed.

C. W. McNeal testified, for the State, that just after the south

bound train passed Encinal Station on the evening of March 7, 1885, he was sitting talking with the deceased at the north end of the depot platform. While thus engaged Morrison came up and asked, "Who is that Mexican in the office with a gun? He looks like he wanted to shoot some one." Deceased replied: "I guess not," rose and walked to a box just north of the office door, on the platform, and was in the act of looking into the office, when a shot was fired from the inside of the office. Deceased wheeled from the door and threw one hand up to his face. The blood gushed from his mouth as he reeled and fell to the platform, about two steps from its north corner or end, exclaiming: "He has murdered me." As the deceased was falling, the defendant, who had come outside of the office, threw a cartridge into the magazine of the gun and fired a second shot at the deceased. Deceased struggled to his feet and fell a second time, near the west side of the platform. As he was falling this last time, the defendant fired a third shot at him.

Witness ran to Hodges's store, about one hundred yards west from the depot, got a gun and returned. He next saw the defendant, a few moments after the shooting, near and going towards Spohns's store. Witness and others established a guard over the store. When defendant came out of that store, after about twenty minutes, with Pedro Cruz, he had no gun. Witness's only reason for saying that Encinal Station was in La Salle county was that everybody told him so.

W. C. Nichols testified, for the State, that, at the time of the killing, he was assistant to the deceased, who was then station agent and telegraph operator, and succeeded the deceased after his death. Witness saw the defendant about the depot office, about ten minutes before the south bound train passed, on March 7, 1885. After it left, witness went to the postoffice situated in Spohns's store, and while in that store heard a shot fired in the direction of the office. Witness stepped to the door and heard two more shots, and started to the depot. He met the defendant, and saw him go into Spohns's store, having with him a Winchester rifle, which the witness had left in the depot office, unloaded, two days before. Hodges was lying on the platform, dead, when witness reached him.

Encinal Station, where the killing occurred, is generally recognized to be in La Salle county. It was so recognized by the postoffice, telegraph and railroad authorities. Witness and all others who lived at Encinal Station voted and paid taxes in La Salle county. The deceased, who lived near the station, rendered and paid his taxes in La Salle county.

County Surveyor Prandy, and Mr. Huddleston, a practical surveyor, testified that the George H. Mills survey, on the boundary of La Salle county, located Encinal Station in La Salle county, half a mile or more distant from the Encinal county line. That survey was shown to have been approved and adopted by the La Salle county commissioners' court, and the certificate of the commissioner of the general land office, introduced by the State, showed that the line run by Mills was recognized by the land office as the boundary line between La Salle and Encinal counties. A witness or two for the defense testified that, according to a survey made by other parties in 1877, Encinal Station was in Encinal county.

The defendant's father and mother testified, in his behalf, that for several years he had been subject to recurring attacks of complete mental derangement, which would cause him to become angry and disrespectful to them, and to abandon his work and wander alone in the brush, sometimes for days at a time. On one occasion, about eighteen months prior to this trial, the defendant left the goats in his charge, and wandered through the brush alone for four or five days, without food or water, and was found in an almost starved condition, and brought home by an American.

The State, in rebuttal, introduced several witnesses, including a physician, who testified that they had known the defendant during his residence in the neighborhood, some eight or ten years, and that he had never manifested any signs of derangement. He had always appeared to them as a perfectly sane man of about ordinary intelligence. He displayed perfect coolness when arrested, just after the murder. One of these witnesses testified that he was present a few days before and witnessed a transaction between defendant and deceased with respect to a pistol which had been pawned to the deceased by the defendant's brother. Defendant left the deceased on that occasion apparently very angry.

The motion for new trial raised the questions discussed in the opinion.

*J. M. Eckford,* for the appellant.

*J. H. Burts,* Assistant Attorney-General, for the State.

HURT, JUDGE. Appellant stands convicted of the murder of G. M. Hodges, in La Salle county, on the 4th day of May, 1885; the jury finding him guilty of murder of the first degree, and imposing the penalty of death.

There being no question whatever of the fact that appellant killed

G. M. Hodges, he relied upon two grounds of defense to the charge: 1st. That the homicide was not committed in La Salle, but in Encinal county.    2d. Insanity.

In regard to the venue, the first error assigned is the overruling of defendant's application for a continuance. This application was made because of the absence of witnesses by whom defendant expected to prove that the homicide was not committed in La Salle county. We are of the opinion that there was no error in overruling the application, 1st, because the venue was very clearly, and, as we think, conclusively shown by the testimony on the trial. 2d. If the witnesses were to show that Encinal Station, the place of the homicide, was in Encinal county, the fact would not probably be true, judging by the evidence adduced on the trial, bearing upon this issue. 3d. Appellant, in his motion for continuance, states that he will prove by the absent witnesses that Encinal Station is in Encinal county. This may be true, and still La Salle county may have jurisdiction of the offense; for, if within four hundred yards of the La Salle line, this county would have jurisdiction.

Second ground of defense: "Insanity." All of the witnesses for appellant whose testimony was desired in support of this defense were present, except one, to wit, David Leavalle. A large number of witnesses were examined on each side upon this question of insanity. By the witness Leavalle it is stated that defendant would prove "that he was of weak mind and subject to fits of such mental derangement and aberration of mind as to incapacitate him from distinguishing right from wrong." Now in this there is no *fact*,— no *act* of defendant,— nothing whatever but the opinion of the witness stated. And while it is true that a witness may give his opinion upon this subject, still, without some fact as a basis, his opinion should have very slight weight. Testing, therefore, this application by the facts proven on the trial, the evidence of Leavalle, if adduced upon the trial, would have, if any, very little effect upon the jury in determining the issue of insanity.

Under the decisions of this court the burden is on the defendant to prove insanity. This was not done in this case, but the State assumed the burden and proved that, at the time of the killing, defendant was, as we think, clearly sane, and of sound memory and discretion.

As bearing upon the question of venue the district attorney, over the objection of the defendant, introduced in evidence the certificate of W. C. Walsh, commissioner of the general land office, to the effect that the Mills survey of the southern boundary line of La

Salle county was recognized by said office as the true line between La Salle and Encinal counties. To this certificate as evidence the defendant objected because said certificate did not contain the field notes of said survey, nor was said survey correct. If, indeed, the certificate by failing to give the field notes proves nothing, defendant, though the evidence was not competent, was certainly not hurt by its introduction. Whether the Mills survey was correct was a question of fact for the jury. It was recognized as such by the general land office. We hold that the objection urged by appellant to the introduction of the certificate was not well taken.

Appellant complains of the charge of the court in reference to the question of venue. Now, there was no exception taken to the charge on the trial of the cause, but it is brought forward first in the motion for a new trial. This being the case, we must look to the whole record and determine whether the charge complained of was such as was calculated to injure the rights of the defendant. Viewing the charge, therefore, in the light of all the facts bearing upon this question of venue, we are perfectly satisfied that, if there was error in the same, defendant was not in the slightest injured thereby.

It is not insisted or pretended by counsel for appellant that the evidence does not support a conviction for murder of the first degree. This is well; because of this there can be no doubt. The homicide was a cool, deliberate, unprovoked and cruel assassination.

We have found no such error in this record as will warrant a reversal of the judgment, and the judgment is affirmed.

*Affirmed.*

[Opinion delivered June 13, 1885.]